Thank you, and may it please the Court, Counsel, my name is Matt Munderloh, I'm from Omaha, Nebraska. I represent the appellant, Duty James Rose, in this matter. At this point today, there is one remaining appellee, Michael Flairty, the other two appellees having been dismissed really at the 11th hour here due to a settlement with those particular appellees. There are two issues in this case. First, what type of immunity is Mr. Flairty, as a probation officer for the State of Iowa, entitled to? Is it absolute immunity, or is it qualified immunity from suit by Mr. Rose? And the second issue then is, under the facts of the case and the circumstances of the case, is he entitled to either? But first, let me just briefly recap the facts. Mr. Rose was sentenced to a period of probation from an Iowa state court, Pottawatomie County. At some point in 2011, that probation was violated and then modified. Eventually, I think about the second time around in November 2011, it was modified to order Mr. Rose to attend the Arch halfway house in Omaha, Nebraska. The Arch offers chemical dependency treatment and uses AA and other religious aspects. That order was by a judge, right? That order was by a state court judge in Pottawatomie County, Iowa. That's correct. And did he raise his membership in the Jehovah's Witnesses to the court at all? He did not at that time. There is evidence in the record that he was not totally aware of what treatment philosophies the Arch halfway house used. And so I don't think that he saw it fit or necessary to raise the issue that he was a Jehovah's Witness and there might be issues with him practicing. Was he aware there was a 12-step program? That's in dispute. There's evidence that Mr. Rose says that he was not aware of that. I do believe that the two appellees who have been dismissed testified in a deposition that's in the record that there was some conversation with him. There was a phone interview of sorts. Did he understand it was a private entity and not a division of the state that was conducting the program? He did not understand that. When he agreed to go there as a part of probation, I don't think that he was aware of the ownership arrangements of the Arch and whether there was a contract between the Iowa state government and the halfway house at that time. Eventually, Mr. Rose makes his way to the Arch in 2011 and things seem to be going okay for a few days. And then the religious infringements begin. There's evidence in the record through Mr. Rose that he was not permitted to read a Watchtower magazine, which is a Jehovah's Witness publication at the Arch. There's evidence in the record that he was unable to attend Jehovah's Witness worshiping off-site. There is evidence where he was specifically directed by Arch staff to not hold any, in his words, little witness meetings at the facility. He had tried to do that. He had asked to do that and that was refused. He was told by Arch staff that he needed to focus on the big book, the Bible, and not read his Jehovah's Witness publications. More importantly, for the purposes of this appeal, he discussed that issue with Mr. Flaherty, the probation officer. And Mr. Flaherty essentially did nothing, turned a blind eye and said, look, you simply need to follow the terms of the treatment program at the Arch to a T or else. Isn't he just carrying out the directive of the judge? The directive of the judge did not order Mr. Flaherty to violate Mr. Rose's First Amendment rights. But it did direct him to attend Arch. And isn't that what the probation officer was doing, was saying, you have to do, you have to attend the Arch program? And so, therefore, why isn't this quasi-judicial immunity? It's not quasi-judicial immunity because the case law in this circuit for the last 30 years has never held that a probation officer is entitled to absolute immunity, as far as I can tell. The first case, which is about 30 years old, sets forth the framework for immunities to which probation officers are entitled. And there is a difference. It depends on the function of the probation officer. So there's language in that first case from 1984. That is the Ray v. Prickett case that really lays the framework. And so if probation officers are performing discretionary functions or they're making decisions like a judge might do, then the probation officer may very well be entitled to quasi-judicial immunity or absolute immunity. On the other hand, there are other duties that a probation officer does. A probation officer investigates probationers and enforces the terms of a probation order. In other words, supervises the probationer. In that Ray v. Prickett case, there's explicit language that for supervisory functions, a probation officer is entitled to nothing other than qualified immunity. In this case, by all accounts, Mr. Flaherty was simply supervising Mr. Rose. He wasn't making recommendations to the court. He wasn't writing a pre-sentence investigation like the other cases that hold a probation officer is entitled to absolute immunity. So here, it's nothing other than supervision. And Mr. Rose submits that under those circumstances, nothing other than qualified immunity would apply. The case is that the… Even if let's assume you're right, why wouldn't qualified immunity apply? Qualified immunity would not apply because Mr. Rose's right to practice his own religion is clearly established. There's case law from many circuits, including this one, that have held that one cannot be forced to attend A.A. or other religious-based treatment philosophies as a part of parole or as a part of probation. Those cases are cited in the briefing. Further, there's really no dispute, as far as I could tell on the record, that Mr. Flaherty violated that right. He wasn't forced, was he? This was a voluntary program, wasn't it? Well, at first, again, there's suggestion in the record in a court order, the Iowa court order that orders him to go there, that he consented to attend the treatment program. That consent then was later withdrawn by him when it became apparent that he wouldn't be able to exercise his Jehovah's Witness. What did he lose? Was there some right withheld from him, some privilege withheld from him? Well, he was unable to exercise his Jehovah's Witness religion practices at the Arch. I'm talking in terms of between him and the government, any right he had, any – Yes, his probation, at least in part, was violated and eventually revoked because he left the Arch facility. And the reason why he left the Arch facility is because he was unable to exercise his First Amendment rights to practice his Jehovah's Witness religion. So there's evidence in the record that the Arch staff people explicitly told him, look, you can choose between, in their words, Jehovah or jail. And Mr. Rose chose jail. He left the Arch facility because he was unable to exercise his religion. Did he notify Flaherty of that? Yes. There is evidence in the record that he did, that there was a conversation that he had with Mr. Flaherty before he left the Arch. And that is the moment that Mr. Flaherty turned a blind eye, looked at no other alternatives, no other secular alternatives that might be able to satisfy the probation order. Were any alternatives suggested to Flaherty by Rose? Not by Rose, no. Well, what's the role of the court in this situation? I'm sorry? What's the role of the court in this situation? The role of the court? Did the court know about this dispute? Did the court direct the person to this program? The court originally ordered him to do the program, and that was, by all accounts, by Mr. Rose's agreement. But he agreed at that time not knowing what the religion restrictions would be at the Arch. And so the court's role is, yes, there was an order ordering him to complete that program. I don't think that either Mr. Rose or the court knew at that time what the religious restrictions would be. Did Mr. Rose ever bring his problem to the attention of the court? No, there's no evidence of that. There's also no evidence that Mr. Flaherty brought it to the court's attention. At what point was Mr. Flaherty not carrying out the court's order? There was no time that he was not carrying out the court's order. But the court's order in this case I still don't think shields Mr. Flaherty from any liability. That court order did not order Mr. Flaherty to aid in violating Mr. Rose's religious freedoms. So why doesn't, when he's faced with the question of, you're now violating my religious freedoms, why doesn't the probation officer's reaction to that become more of a discretionary function and therefore eligible for immunity? Because at that point the probation officer, as discretionary functions have been addressed, in the context of absolute immunity, just having that conversation and not investigating any other alternatives has never been held to be a discretionary function. I think you'll concede that the order saying attend ARCH doesn't say, despite your religious objections, attend ARCH. That's correct. So he then raises some religious objections with the probation officer. At that point it seems to me that the reaction is a little more discretionary, or not? I don't think so. It's still just saying, okay, here's what the order says, and this is what you need to do, and here's what I need to do in order to supervise you. And so as a part of my supervision, if you're not at the ARCH, then I'm going to have to file a violation. A discretionary function would come into play if Mr. Flaherty brought it to the court's attention and nonetheless recommended it to the court or recommended some other alternatives. And there's a seminal trial court opinion from another circuit in the Eastern District of Michigan that is really right on point to this case, and it makes that distinction. So the probation officer or the drug court coordinator there, by recommending the program up front to the court, the court determined that that's a discretionary function. But after the order was entered and the probation officer was just ensuring that the probation officer was complying, that's supervisory in nature. I'm in my rebuttal time. Even when a new issue that wasn't anticipated was brought to the attention of the probation officer? Correct. In the Michigan case, I don't think that there was any evidence up front when the recommendation was being made what the religious restrictions in that case would be either. Mr. Goodall. Thank you, Your Honor. May it please the court. Counsel. My name is Forrest Goodall. I represent Mike Flaherty in this. There are two issues, and that is whether or not Mr. Flaherty is entitled to absolute quasi-judicial immunity or qualified immunity. I assert, as the district court found, that either way he is immune. There are two requirements for absolute quasi-judicial immunity. There must be action taken in a judicial capacity, and we have that in the Pottawatomie County District Court order by Judge Stensland. And then there must be jurisdiction. There is jurisdiction for this order requiring Mr. Rose to go to the arch, and I refer the court to the brief, but Iowa Code Section 907.6 talks about the judicial district imposing restrictions with the approval of the court. Now, there are two types of this absolute quasi-judicial immunity, and Mr. Rose focuses only on one, and that is kind of this functional test that has derived from the quasi-judicial process. That is, when there is a judicial decision-making or adjudicatory action taken, then absolute immunity may apply, even if it's an executive branch that's doing that. I think of the Economo case that comes to mind. But judicial immunity, absolute quasi-judicial immunity, can also apply when somebody is carrying out a judicial order, and we find that in a number of cases, not just the Martin case that I cite, but in the Patterson case, in Figg v. Russell, there's a reason for that. The reasons are set out in the Patterson case. And what was the precise order of the judge? The precise order of the judge, the relevant portion is that being fully advised in the premises and with the consent of both parties, the court finds that the defendant is hereby required to successfully complete the ARCH program. So it wasn't just go to it and attend, see how you like it, but to complete. And then it goes on and says the defendant shall follow all rules, regulations, including drug testing and treatment requirements, et cetera, et cetera, as well as the requirements and conditions of the ARCH program. And that's found at page 49 of the appendix. So he's required to complete and not only satisfy what the fourth judicial district puts on him as far as supervisory restrictions, but he's also supposed to adhere to and meet the requirements and conditions of the ARCH program. Did he attempt to get that court order modified? No. To my knowledge, he did not. There is nothing that indicates he made any sort of application to modify it. And even a court order that is wrong or later determined to be wrong has to be followed until it is modified. And that's all that Mike Flaherty was doing here. Does it matter whether he's in seeking to enforce the court order, the probation officer, does it matter whether he was acting in a discretionary or a non-discretionary manner? You know, I think it does not matter in this case because whether you use qualified immunity or absolute immunity, it takes care of the money damages and there's immunity, and it's moot now as far as the equitable relief so that you get to the same place. But actually, I think that absolute quasi-judicial immunity is the more appropriate immunity here, given these circumstances, given this court order. You know, you think about- I don't mean to belabor this, but I don't suppose to be an expert in quasi-judicial immunity, but there are some forms of immunity where it matters, whether you're acting in a discretionary manner or a non-discretionary manner. Typically, immunity is granted where somebody is acting in a non-discretionary manner and not in a discretionary manner on some forms of immunity, and I'm just wondering if you can enlighten me on that and tell me whether it matters here and whether he's acting in a discretionary or non-discretionary fashion. I think that Mike Flaherty is acting in essentially a non-discretionary role here, and because it's non-discretionary, given the court order, that absolute judicial immunity flows through to his supervision of Mr. Rose. Is there a case that will support that? I think that if you look again at the Martin case, perhaps the best exposition of it is the Patterson case, the Figg v. Russell case. You know, Martin was the case where the court was in session, there was an unruly person in the courtroom, the judge orders the bailiff to go arrest that person and take him out of the courtroom, and they do that, and then the person who's taken out sues, and there the bailiff is given absolute immunity because it was simply following the judge's order, the directive. In Patterson, you had a situation where a warden was holding somebody, incarcerating somebody, pursuant to a valid or facially valid court order that was later overturned, I believe, and then once the inmate is released, he sues the warden, and the absolute immunity flowed to the warden. In Figg, you've got a parole officer who is carrying out the parole board's discretionary adjudicatory function, and I think he passes the notice on or the directive on to the plaintiff in that case, and he's afforded absolute immunity. And likewise, Mike Flaherty should also have immunity here. And the basis for that immunity, that absolute immunity, I think, are for the three reasons that were given in the Patterson case. That is, you know, state actors become lightning rods for these sorts of suits, these harassing, vexatious suits, because there's no other target for the plaintiff to sue. They can't sue the judge, and so they can't sue the prosecutor, so they go to whoever incarcerates them. The other reason is that it's simply unfair, that it puts the executive or state actor in the position of, do I obey the court order and face damages, or do I not obey the court order and face contempt charges by the court? It's a no-win situation. And finally, the third and perhaps most important is that it offends the judicial process where you, the court, expect your orders to be followed. That's how our system works. And in order for that to be followed, they have to be able to be implemented without immunity, and that's why we have this sort of immunity. Mr. Rose had options available to him. He could have filed a grievance. Maybe that makes Mr. Flaherty talk to the ARCH program about whatever particular problem there was in trying to alleviate it to the satisfaction of all parties so that he could complete the district court's order. He didn't do that. He could have filed a motion to reconsider the order. He was represented by counsel. He could have done it pro se. He didn't do that. He could have raised his constitutional rights as a defense at his revocation hearing that was subsequently held. He didn't do that because he had absconded and was on the lam at that time. Finally, he could have filed a post-conviction relief action under Iowa Code Chapter 822, seeking a determination that his revocation was improper and try to raise the preservation of his religious rights as a justification. He didn't do that either. What he did do was the one thing he couldn't do, and that was abscond and be caught months later in a rolling pawn shop with a firearm. So on qualified immunity, is it your position that there was no constitutional violation here or that there was one that wasn't clearly established? My position is that if the court denies absolute quasi-judicial immunity and moves on to the qualified immunity, then Mike Flaherty would be entitled to qualified immunity as well, and here's why. There is case law that says that you have to have a secular counterpart to the sectarian AA 12-step program. The complicating factor is, again, that I've seen nowhere in, you know, the half or the Inouye, the Hayes, or the Hammons case where there was a court order at issue like we have specifically in this case. So the question comes back to do I violate the court order or do I enforce the court order and allegedly violate this person's rights? A reasonable person falling or erring on the side of following the court order removes it from the clearly established prong, and, therefore, they're entitled to qualified immunity. Even if you assume that there's a constitutional violation, the presence of the court order and the complicating factor of obedience to that court order places it into the not clearly established category, and I don't know. The only case that stands for it that we've heard was the case of the district court on an initial review study. That's that Hanas case, and Hanas, with all due respect, the Michigan court, I believe they just got it wrong for the reasons stated in Patterson. To have a caseworker follow a court order and then deny them absolute immunity for that I think is just wrong. Just as the Hanas case declined to follow the other circuit cases that were contrary to its holding, I think this court should decline to follow Hanas for the reasons stated in the Patterson case. What if Rose had told them that the ARCH program, they torture me there? Would he be allowed to ignore that? He would not be allowed to ignore that, I don't believe, because under the Eighth Amendment, cruel and unusual punishment, there's some sort of duty. How about the First Amendment, his right to religious practice? I think it's, well, let me jump back to your first scenario. If he says they're torturing me there, you're talking about in the ARCH program. I think that he would probably, that there's a separate duty under the Eighth Amendment that's not triggered under the First Amendment. I know of no duty that requires Mr. Flaherty to be a First Amendment advocate of Mr. Rose. And that's also kind of what I think is wrong with the Hanas case is that it almost flips that on its head and makes the caseworker in Hanas liable for not advocating in favor of the offender in Hanas, Mr. Hanas. And that simply, I think, is not the role of the respective parties. This is kind of a long way around to what this case, I think, actually boils down to, and that is simply that state actors should not be held liable for following a court order and that Mr. Rose had recourse. He didn't take it. He did the one thing he shouldn't have done, and the district court was absolutely correct in granting absolute immunity as well as qualified immunity given the record before the court. I thank the court for its time. Hey, Mr. Wunderlich, a fine German name. Thank you. Mr. Flaherty's argument in reliance on just following orders as a probation officer is a dangerous path to travel. There's no case that I'm aware of that entitles or shields probation officers through absolute immunity other than those cases where a probation officer is making recommendations to a court through a pre-sentence investigation or some other mechanism. He's pretty much relied on this Patterson case. Our Patterson case, what do you say to that? Well, the Patterson case, and I could be corrected on this, but the Patterson case is about parole officers, prosecutors, and jail wardens. And so when you look at the case law that talks about quasi-judicial immunity, they almost always begin with a discussion about whether these individuals, these state actors, were entitled to absolute immunity under common law. And the Patterson case and cases before and after it talk about jailers and wardens were entitled to absolute immunity of common law. And so I think that the discussion in Patterson is limited to that. And the same with respect to- Wait. You left off probation officers the second time you came back to your list. Why isn't this-actually, you left off parole officers. Why isn't this probation officer just the same as a parole officer? Well, there are cases, I think, that hold that parole officers are not always entitled to absolute immunity either. But to the extent that there are cases that say that they, parole officers, are entitled to absolute immunity, it's because they, like a court or a judge, are making recommendations. They're making decisions. They're choosing whether to grant parole or they're choosing whether to violate someone's parole and put them back in prison. Those are functions, like a judge or like a court, to determine whether the person should go to jail or prison to begin with. Unlike a probation officer, like Mr. Flaherty, who's just supervising, in this case, is just supervising Mr. Rose. And so that's the difference. I thank you for your time.